UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULINE DALE STONEHILL, Co-Executor, Estate of Harry Stonehill,<br><br>**Plaintiff,**<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE CRIMINAL DIVISION,**<br><br>**Defendant.** | Civil Action No. 22-311 (JEB) |

## MEMORANDUM OPINION

For more than six decades, Harry Stonehill and his estate have been attempting to get to the bottom of alleged U.S. Government involvement in a 1962 raid on his businesses in the Philippines. As relevant here, on September 19, 2018, Plaintiff Pauline Stonehill — executrix of Stonehill's estate — filed a Freedom of Information Act request with the Criminal Division of the Department of Justice. After waiting unsuccessfully for more than three years, she brought this suit, which seeks to compel production of documents relating to the transfer of certain files relating to the Stonehill investigation. She now moves to amend the Complaint to include documents that were the subject of prior litigation. As the Court believes amendment is not futile at this stage, it will grant the Motion.

**I.  Background**

In 1962, local police raided several businesses across the Philippines that belonged to American citizen Harry Stonehill. See ECF No. 1 (Compl.), ¶ 10. The officers seized over a million documents. Id., ¶ 11. The Philippine government handed many of the documents over to the United States, which began civil tax proceedings against Stonehill using those documents

1

as evidence.  See United States v. Estate of Stonehill, 660 F.3d 415, 417–19 (9th Cir. 2011) (describing factual background).  It is relevant here that in those proceedings Stonehill moved to suppress the documents, arguing that the evidence had been illegally obtained in the 1962 raid.  That motion was denied in 1967.  United States v. Stonehill, 274 F. Supp. 420 (S.D. Cal. 1967).  In 1976, the Government eventually obtained a final civil tax judgment against Stonehill for $8.6 million.  See United States v. Stonehill, 420 F. Supp. 46 (C.D. Cal. 1976); Stonehill v. Comm'r, 48 T.C.M. (CCH) 394 (T.C. 1984) (calculating final amount owed).

Our saga was just beginning.  Fast-forward to August 20, 2000, when, upon discovering through FOIA requests to several government agencies that a witness had lied during the 1967 hearing on the motion to suppress, Stonehill filed a Rule 60(b)(6) motion to vacate the 1976 judgment.  See Estate of Stonehill, 660 F.3d at 430.  His motion maintained that the 1967 motion to suppress was improperly denied.  Id. at 420.  In litigating that Rule 60 motion, lawyers at DOJ's Tax Division submitted as evidence several documents held by DOJ's Criminal Division, which was conducting its own investigation into Stonehill.  See Compl., ¶ 1.  Those documents were pulled from what the National Archives and Records Administration (NARA) had labeled Accession Number 60-90-467, which for ease of reference the Court will call "Box 1."  Id., Exh. 3(j) (Statement from Leslie Rowe).  On February 8, 2001, Stonehill emailed the Tax Division to request all the documents in Box 1, but the Tax Division told him that such requests would have to be made through the Criminal Division.  Id., Exh. 3(b) (Letter from David Hubbert).  Stonehill then filed a FOIA request for Box 1 with the Criminal Division on February 12, 2001.  Id., Exh. 3(c) (February 12, 2001, FOIA Request).  He followed up with a FOIA suit on January 8, 2002.  Id., ¶ 45.

On February 6, 2002, the Criminal Division reported to Stonehill that it could not find Box 1. Id., ¶ 46. Shortly after that, in a March 2002 letter, Criminal Division Records Consultant Leslie Rowe suggested to Stonehill that Box 1 may have been lost in a December 2000 office move. See Statement from Leslie Rowe. He also claimed that he was unable to find any other documents relating to Stonehill. Id. On April 3, 2002, based on the letter from the Criminal Division and the statement from Rowe, Pauline Stonehill — proceeding on behalf of her by-then-deceased-husband Harry — agreed to a dismissal of his FOIA suit with prejudice. See Compl., ¶ 49. The terms of the settlement required that the January 8, 2002, FOIA request would not be reopened with the Criminal Division. See ECF No. 17 (Opp.), Exh. 1 (Stipulated Dismissal).

After discovering more information in the intervening years, on September 19, 2018, Stonehill submitted the FOIA request at issue in this case. That request was for Stonehill documents related to those she was barred from requesting by the settlement. Without significant movement on the request from the Criminal Division for over three years, she filed the current suit on February 4, 2022. On May 22, 2023, Plaintiff filed the present Motion to Amend to ask for the documents that were barred in the 2002 stipulated dismissal.

In so moving, Plaintiff argues that the 2002 stipulated dismissal was obtained through fraud on the court. See ECF No. 20 (Corr. Reply) at 2–3. She bases this assertion on information she received in NARA's April 23, 2023, response to a separate FOIA request. There are two key pieces of information revealed in the NARA letter. The first is that Box 1 has reappeared and is currently stored at NARA. See Corr. Reply, Exh. L (April 23, 2023, NARA letter). In fact, it moved between the Criminal Division and NARA four times in the past thirty years. See Corr. Reply, Exhs. 1(c)-(i) and 4 (NARA Records and Criminal Division Records).

The second piece of information is the revelation that in October 1999, Leslie Rowe permanently withdrew twelve containers of Stonehill files from NARA.  See April 23, 2023, NARA letter; Corr. Reply, Exh.1(b) (NARA Records).  Despite this, a little over two years later, Rowe stated that he could not find any files relevant to Stonehill.  See Letter from Leslie Rowe.  Plaintiff relied in part on such statement when she agreed to the 2002 stipulated dismissal.  See Compl., ¶ 49; Stipulated Dismissal.

## II.     Legal Standard

A plaintiff may amend her complaint once as a matter of course within 21 days of serving it or within 21 days of the filing of a responsive pleading.  See Fed. R. Civ. P. 15(a)(1).  Otherwise, she must seek consent from the defendant or leave from the court.  The latter "should [be] freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In deciding whether to grant leave to file an amended complaint, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962).  In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason."  Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Under Rule 15, furthermore, "the non-movant generally carries the burden in persuading the court to deny leave to amend."  Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

It is clear, however, that amendment should not be permitted if it would be futile.  In other words, if the amendment is facially infirm, courts need not grant leave.  See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.") (citing

4

Foman, 371 U.S. at 182, for proposition that "'futility of amendment' is permissible justification for denying Rule 15(a) motion"); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996)) (same).

### III.   Analysis

In opposing Plaintiff's Motion, Defendant argues that the proposed amendment is futile, offering two explanations. First, the Government asserts that *res judicata* precludes the amendment because Harry Stonehill agreed to a stipulated dismissal with prejudice of his original FOIA action in April 2002. See Opp. at 2–6. Second, the Government maintains that the Amended Complaint is time barred given the six-year statute of limitations established in 18 U.S.C. § 2401(a). Id. at 6. Stonehill throws an additional wrench into the proceedings, announcing her plan to submit a Rule 60(b) motion for relief from the 2002 judgment. See Corr. Reply at 11–12. The Court will address each issue separately.

#### A. *Res Judicata*

The Government initially contends that Plaintiff's proposed amendment would be futile because it is precluded by *res judicata*. See Opp. at 3. "Under the doctrine of *res judicata*, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits[] (4) by a court of competent jurisdiction." Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006) (formatting altered) (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 323–24 (1971)).

Although Plaintiff did not directly respond to the Government's *res judicata* argument, at this stage, the Court does not find "sufficient reason" to conclude that the third factor has been satisfied here. See Firestone, 76 F.3d at 1208. This is because there is some evidence that there

may have been fraud upon the court, and denying Plaintiff's Motion would serve only to reward the fraudulent activity. Cf. Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (establishing "the inherent power [of] a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court").

There are also several equitable reasons for reaching such result. First, Plaintiff levies serious allegations against Defendant, and the Court wonders why — if the Government indeed has the documents — it has not produced them. Second, Stonehill's Reply contemplates full briefing on the *res judicata* issue once the Government files a motion to dismiss. Id. at 4. Although it can be risky to keep your powder dry like this, the Court believes that it would benefit from full briefing on the issue.

Finally, because Interbank Funding Corp. says only that a court "may" deny leave to amend if the resulting complaint would not survive a motion to dismiss, the Court is not required to deny the Motion. See 629 F.3d at 218. In fact, a court in this district previously grappled with the balance between futility arguments and motions to dismiss. In Farouki v. Petra Int'l Banking Corp., No. 08-2137, 2013 WL 12309520 (D.D.C. June 12, 2013), Judge Royce Lamberth wrote that "[c]ourts should be careful not to use the futility of amendment standard as a shortcut for a properly filed and fully briefed motion to dismiss." Id. at *3 (internal quotation marks omitted).

In line with the reasoning in Farouki, the equitable considerations discussed above, and the presumption toward freely granting leave to amend, the Court reserves judgment on the *res judicata* arguments and will not preclude Plaintiff from amending on that ground.

B. Statute of Limitations

The Government next argues — albeit briefly — that Plaintiff's Motion is time barred. See Opp. at 6. Title 28 U.S.C. § 2401(a) states that "every civil action commenced against the

6

United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  Defendant accurately summarizes the statute's application to FOIA requests, see Reply at 6 (citing Reep v. Dept. of Justice, No. 18-5132, 2018 WL 6721099, at *1 (D.C. Cir. Dec. 18, 2018)), but the fraud issue lurks once again.

Plaintiff maintains that the alleged fraud should toll the statute of limitations, arguing that "the Supreme Court has clearly rejected any notion that diligence or timeliness [is] relevant" when "extraordinary circumstances" such as fraud are present.  See Corr. Reply at 13 (citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 247 (1944)).  In this Circuit, "[e]quitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on the existence of her claim."  Smith-Haynie v. District of Columbia, 155 F.3d 575, 579 (D.C. Cir. 1998).  This power, though, should "be exercised only in extraordinary and carefully circumscribed instances."  Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  Fraud is one such instance.  See Quick v. EduCap, Inc., 318 F. Supp. 3d 121, 143 (D.D.C. 2018) ("Fraudulent concealment is an equitable doctrine that is read into every federal statute of limitations, which equitably tolls the statute of limitations.") (formatting altered); Amobi v. D.C. Dept. of Corr., 755 F.3d 980, 988 (D.C. Cir. 2014) ("[T]he fraudulent concealment must actually succeed in precluding the plaintiff from acquiring knowledge of the material facts" to justify tolling the statute of limitations).

Although Plaintiff did not develop this line of argument in her Reply, the Court finds enough support in the caselaw to reserve judgment on whether § 2401(a) bars amendment.  If fraud prevented Plaintiff's late husband from fully presenting his case — and Plaintiff had no way of knowing that — then equity may require that the statute of limitations be tolled.  Regardless, even if this Court did deny Stonehill's Motion to Amend, she could simply file a

new FOIA request and return to court, making the same claims she presents now.  Fraud and efficiency concerns thus counsel against denying the Motion without further briefing.

    C.  Rule 60(b)

Plaintiff warns that she plans to file in this case a Rule 60(b) motion for relief from the 2002 judgment.  See Corr. Reply at 11.  The Court will save her some time.  If she intends to file such a motion, she must do so in that litigation, not this one.  There is no judgment here to vacate.

**IV.**    **Conclusion**

For these reasons, the Court will grant Plaintiff's Motion to Amend.  A separate Order so stating will issue this day.

                                    /s/ *James E. Boasberg*
                                    JAMES E. BOASBERG
                                    United States District Judge

Date: July 21, 2023